1998 ND 173

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Dean T. GARRETT, Defendant and Appellant.**

**Criminal Nos. 970326–970328.**

Supreme Court of North Dakota.

Sept. 18, 1998.

Loren C. McCray (argued), Beulah, for defendant and appellant.

Larry W. Quast (argued), State's Attorney, Stanton, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Dean Garrett appeals from orders denying his motions to suppress evidence pertaining to three alcohol-related charges from two separate incidents. All three cases were consolidated for this appeal. We affirm.

I.

[¶ 2] Late on March 28, 1997, Mercer County Sheriff's Deputy Steve Kilde was on routine patrol of the Hazen Bay Recreational Area. Noticing a bonfire and a group of people near the picnic area, Kilde drove closer to the area. As he approached, he saw five of the group throwing "alcohol receptacles" into the trees. Kilde recognized many of the group, including Garrett, whom he recalled was a minor. Kilde asked for identification, and as he began to separate the adults from the minors, Garrett ran from the area. Kilde did not run after Garrett, but returned to his squad car to radio for assistance.

[¶ 3] On his way to his squad car, Kilde walked past a Chevy Cavalier parked in the public parking area. Kilde identified the vehicle as one he had seen Garrett drive. As he approached the vehicle, somewhat illuminated by the bonfire and a nearby street light, Kilde saw an open beer box on the front passenger seat.

[¶ 4] Lieutenant Burling arrived to assist Kilde, and the two officers decided to impound Garrett's vehicle "for evaluation as evidence." The box of beer remained inside the vehicle, which was impounded and towed to the Sheriff's Department. Later that night, Kilde searched the vehicle and found seven full cans of beer inside the box on the passenger seat, and two empty beer cans and an empty .5 ml bottle of schnapps under the front seats.

[¶ 5] On April 4, 1997, Garrett was subsequently charged with violating N.D.C.C. § 5–

01–08, possession of an alcoholic beverage by a minor.

[¶ 6] On March 30, 1997, Deputy Kilde was called to assist Officer Locke, of the Hazen Police Department, investigate a report of a fight at the Roughrider Motel in Hazen. Kilde was informed Garrett had been involved in the fight and could be found at the motel.

[¶ 7] At the motel, Kilde approached a Dodge Charger sitting in front of Locke's patrol car. Kilde recognized Garrett as the driver of the vehicle. Kilde talked to Garrett, who told him he had just been in a fight, but did not want to press charges. During the conversation, Kilde observed "a strong odor of an alcoholic beverage emitting from his vehicle." Officer Locke administered field sobriety tests, which Garrett failed. Locke placed Garrett under arrest for violating N.D.C.C. § 39–08–01, driving under the influence, and gave the North Dakota implied consent advisory. At the Mercer County jail, Garrett was searched, and an "alcohol receptacle [was found on] Mr. Garrett's person."

[¶ 8] On April 2, 1997, Garrett was charged with violating N.D.C.C. § 5–01–08, for the possession of the "alcohol receptacle" found on his person when he was arrested for driving under the influence.

[¶ 9] On June 12, 1997, Garrett brought three separate motions to suppress evidence relating to the three alcohol-related charges. First, Garrett moved for the suppression of all evidence gathered after the impoundment and search of his vehicle on March 28, 1997, on the grounds "the impoundment and search was illegal under Article I, Section 8 of the North Dakota Constitution and the Fourth Amendment of the United States Constitution."[1] Second, Garrett moved for the suppression of the DUI evidence, includ-

ing lab reports and witness' statements, on the grounds "there was no articulable and reasonable suspicion for the investigative stop" of his vehicle on March 30, 1997. Third, Garrett moved for the suppression of evidence relating to the minor in possession charge of March 30, 1997, also on the grounds "there was no articulable and reasonable suspicion for the investigative stop."

[¶ 10] After a September 8, 1997, evidentiary hearing on the motions, the trial court issued orders denying all three suppression motions on October 6, 1997.[2] On October 8, 1997, the trial court gave its memorandum opinion orally. On that same date, Garrett entered conditional pleas of guilty to all three charges · under N.D.R.Crim.P. 11(a)(2). On October 16, 1997, Garrett filed a notice of appeal of the trial court's orders denying his suppression motions.

[¶ 11] In *State v. Sabinash,* 1998 ND 32, ¶ 8, 574 N.W.2d 827, we recalled our standard of review of a trial court's denial of a suppression motion, as enunciated in *State v. Bjornson,* 531 N.W.2d 315, 317 (N.D.1995)(internal citations omitted):

> The trial court's disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. That standard of review recognizes the importance of the trial court's opportunity to observe the witnesses and assess their credibility, and we "accord great deference to its decision in suppression matters."

We have reviewed the records here, and conclude the trial court's denial of the suppression motions is supported by competent

---

1. In *State v. Hensel,* 417 N.W.2d 849, 853 n. 2 (N.D.1988), we declined to address a more "expansive view" of the protections afforded under the North Dakota Constitution. Like *Hensel,* Garrett provides no argument on the state constitution other than his bare assertion the impoundment and search violated Article 1, Section 8 of that document. Because of Garrett's failure to brief the issue, we adhere to our position in *Hensel* and treat the federal and state provisions synonymously in this case.

2. Here, the record on appeal does not include an order denying the suppression motion for case number 970328 (minor in possession charge from March 28, 1997). However, because the trial court transcripts reference orders denying the suppression motions in all three cases, we will treat the suppression orders as though they apply to all three cases.

evidence and is not contrary to the manifest weight of the evidence. We therefore affirm the trial court's denial of Garrett's suppression motions.

## II.

[¶ 12] Garrett contends the beer found by Deputy Kilde during his warrantless search of Garrett's vehicle on March 28, 1997, should have been suppressed. The State argues a warrant was not necessary for the search of Garrett's vehicle, as "Kilde did not invade any constitutionally protected area of [Garrett's] when he seized the beer and the automobile."

[¶ 13] It is axiomatic that the Fourth Amendment's protection from unlawful search and seizures is not triggered unless there has in fact been a "search" or "seizure" by the State. Our initial inquiry, therefore, is whether Deputy Kilde "searched" Garrett's vehicle when he viewed the open beer box on the front seat of the vehicle. The question of whether a search rises to the level of Fourth Amendment activity is guided by what has become known as the "reasonable expectation of privacy" test. *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *State v. Planz*, 304 N.W.2d 74, 79 (N.D.1981).

[¶ 14] We stated in *Planz*, however, "searches of vehicles may be made under circumstances where searches of buildings would not be allowed because of the ambulatory character of automobiles, the lesser expectation of privacy as to automobiles, and the fact that automobiles are often within the plain view of officers." 304 N.W.2d at 79 (relying on *State v. Stockert*, 245 N.W.2d 266, 269 (N.D.1976)). We accordingly held in *Planz* that a person has no reasonable expectation of privacy to contraband left on the front seat of an unattended vehicle while parked in a public parking lot viewable to any passerby. *Id.* at 80. Here, the record indicates Garrett's vehicle was parked, unattended, and unlocked in a public parking lot when Deputy Kilde walked by and viewed the beer on the front seat. On this record, we conclude the open box of beer in Garrett's vehicle was not discovered pursuant to a "search" within the meaning of the Fourth Amendment.

[¶ 15] Our inquiry, however, is not at an end here. "The search of an automobile, with or without a warrant, must be made upon probable cause, based upon a reasonable belief arising out of the circumstances known to the officer, that the automobile contains articles which are subject to seizure." *State v. Meadows*, 260 N.W.2d 328, 330 (N.D.1977). In *Meadows*, we upheld the denial of a motion to suppress a gun found in the console of a vehicle during a warrantless search. *Id.* at 333. There, an officer observed a driver drinking a beer while driving through town. *Id.* at 329. Shortly thereafter, the driver parked and left his vehicle. *Id.* The officer drove alongside the vehicle and observed an open six-pack of beer on the front passenger seat. *Id.* The officer then seized the beer, continued to search the vehicle, and found a gun in the console. *Id.* We concluded the beer in "plain view" gave the officer probable cause to search the interior of the defendant's vehicle. *Id.* at 331.

[¶ 16] Plain view alone, however, is never enough to justify the warrantless search or seizure of evidence. It has been stated "that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *see also Planz*, 304 N.W.2d at 81. In other words, an officer with a plain view of contraband which gives rise to probable cause is not immunized from our rule that a "warrantless search and seizure is unreasonable unless it falls within one of the exceptions to the constitutional requirement that a search be conducted pursuant to a valid search warrant." *State v. Koskela*, 329 N.W.2d 587, 591 (N.D.1983).

[¶ 17] Yet, in *Planz* we found an exception to the exigent circumstances requirement where the evidence to be seized is "displayed in a manner that does not afford it a reasonable expectation of privacy and it is the instrumentality of the crime for which the defendant is arrested." *State v. Gronlund*, 356 N.W.2d 144, 147 (N.D.1984) (citing *Planz*, 304 N.W.2d at 81). In *Planz*, we found the exception to apply where an offi-

cer, suspecting drug use, walked by and viewed a marijuana pipe on the front seat of a vehicle parked in a public parking lot. 304 N.W.2d at 76. Similarly here, after Deputy Kilde witnessed a group of people throwing alcohol receptacles into the trees, Garrett among them, he observed an open box of beer in clear view through the window of Garrett's unlocked vehicle. We therefore conclude Deputy Kilde could have seized the open box of beer because it was displayed in plain view on the front seat of the vehicle with no expectation of privacy and concerned the very item which gave him probable cause to arrest Garrett. Deputy Kilde, of course, chose not to search the vehicle or seize the beer on the scene and instead impounded the vehicle for a later search at the station.

[¶ 18] Accordingly, we consider whether the impoundment of Garrett's vehicle "for evaluation as evidence" and subsequent search of the vehicle at the station was reasonable under the Fourth Amendment.[3] More specifically, we must determine whether Deputy Kilde was required to obtain a warrant to search Garrett's vehicle once he impounded the vehicle to the station. Although we have not previously addressed this issue, we conclude that under a series of United States Supreme Court decisions, the answer to that question is no.

[¶ 19] In the 1970 decision, *Chambers v. Maroney*, the Supreme Court concluded, in circumstances where a vehicle "could have been searched on the spot when it was stopped," it was not unreasonable to seize a vehicle and bring it to the station to search it there instead. 399 U.S. 42, 52 n. 10, 90 S.Ct.

1975, 26 L.Ed.2d 419 (1970). In reaching this conclusion, the Court discussed the underpinnings of the "automobile exception" to the warrant requirement created in *Carroll v. United States. Id.* at 48, 90 S.Ct. 1975 (citing *Carroll*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). The Court noted *Carroll* and subsequent decisions had excused the warrant requirement to search a vehicle primarily because vehicles are inherently "mobile" and can be "quickly moved" out of the jurisdiction. *Id.* at 50–51, 90 S.Ct. 1975. With the focus on the mobility concerns of the automobile exception, the *Chambers* majority had to decide whether the warrantless search of the vehicle at the station, when mobility concerns were no longer implicated, was reasonable.

[¶ 20] The Court opined, "[f]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." *Id.* at 52, 90 S.Ct. 1975. The Court, however, upheld the warrantless search at the station because "[t]he probable-cause factor" that developed at the scene "still obtained at the station house." *Id.* The Court noted it was not unreasonable to take the vehicle to the station because all the occupants of the vehicle were "arrested in a dark parking lot in the middle of the night [and a] careful search at that point was impractical and perhaps not safe for the officers[.]" *Id.* n. 10.

[¶ 21] The warrantless search in *Chambers* was apparently upheld because "once the car

---

3. We note the circumstances in this case do not fit the analysis used in our automobile inventory search cases. *E.g., State v. Kunkel*, 455 N.W.2d 208 (N.D.1990); *State v. Muralt*, 376 N.W.2d 25 (N.D.1985). Under the inventory search exception, "police need neither probable cause nor a warrant to search a vehicle." *State v. Holmes*, 569 N.W.2d 181, 186 (Minn.1997) (citing *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983)). In other words, the basis for an inventory search does not arise because the police suspect the vehicle contains contraband or evidence of crime. Rather, the basis for an inventory search rests on the administrative and caretaking functions which we identified in *Kunkel*, 455 N.W.2d at 211 (citing *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 93

L.Ed.2d 739 (1987)). The Fourth Amendment examination of an inventory search, therefore, turns not on the issue of probable cause, which is the traditional basis for the warrantless search of vehicles, but on the issues of whether the vehicle was properly impounded and the search was carried out in accordance with standard police procedures. *Holmes*, 569 N.W.2d at 187; *see also State v. Goff*, 166 W.Va. 47, 272 S.E.2d 457, 459 (1980) (discussing the difference between inventory searches and the "automobile exception"). Because we have concluded Deputy Kilde possessed the requisite probable cause to search Garrett's vehicle, it is unnecessary to consider Garrett's argument that the impoundment and subsequent search of his vehicle was an improper inventory search.

was legitimately at the station house a prompt [warrantless] search could be conducted." *Texas v. White*, 423 U.S. 67, 69–70, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) (Marshall, J., dissenting). "But in recognition of the need to justify the seizure and removal of the car to the station house," the *Chambers* majority discussed exigent circumstances in footnote 10. *Id.* at 70, 96 S.Ct. 304. It was therefore plausible to read *Chambers* as requiring exigent circumstances in order to lawfully seize a vehicle and bring it to the station for a search there instead of one at the scene.

[¶ 22] Because of the majority's reliance in *Chambers* on the "mobility" notion of the "automobile exception" and discussion of exigent circumstances in footnote 10, the lower courts were unclear under what circumstances a warrant would be required to search a vehicle which had been seized and brought to the station. *See generally* 3 W. LaFave, *Search and Seizure*, § 7.2(a), at 461–66 (3d ed.1996). In the aftermath of *Chambers*, some courts required police to obtain a warrant to search a vehicle that had been impounded or taken to the station primarily because the "mobility" rationale of the automobile exception was not then implicated as the vehicle had essentially become "immobile" at the station.

[¶ 23] In *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the Court, once again confronted with a warrantless vehicle search, attempted to square its prior reliance on the two different "automobile exception" theories—mobility and a lesser expectation of privacy. Acknowledging that the "capability to be quickly moved" was the basis of the "automobile exception" under *Carroll v. United States* and the early automobile exception cases, the Court concluded it was no longer "the only basis for the exception." *Id.* at 391, 105 S.Ct. 2066. "Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception." *Id.* at 391, 105 S.Ct. 2066. These reduced expectations, the Court reasoned, derived from the "pervasive

schemes of regulation ... and the exigencies attendant to ready mobility [which] justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met." *Id.* at 392, 105 S.Ct. 2066.

[¶ 24] Professor LaFave characterized the consequence of *Carney*'s reliance upon the "reduced expectation of privacy" theory by stating "warrantless car searches are not likely to be jeopardized by delay in making the search." 3 W. LaFave, *supra* § 7.2(b), at 476. "Indeed," LaFave states, "any lingering doubts about the validity of delayed vehicle searches at the station have been dissipated by the Supreme Court's decision in *United States v. Johns.*" *Id.*

[¶ 25] In *United States v. Johns*, police seized two vehicles, took them to the station, unloaded the packages found therein, and then searched those packages three days later. 469 U.S. 478, 481, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). Though the primary issue concerned the validity of the search of the packages, the *Johns* holding is relevant here because the Court explicitly rejected the notion that "searches of containers discovered in the course of a vehicle search are subject to *temporal restrictions not applicable to the vehicle search itself.*" *Id.* at 485, 105 S.Ct. 881 (emphasis added). In addition, the Court stated:

> [O]ur previous decisions indicate that the officers acted permissibly by waiting until they returned to [the station] before they searched the vehicles and removed their contents. There is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure. *The justification to conduct such a warrantless search does not vanish once the car has been immobilized. A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search.*

*Id.* at 484, 105 S.Ct. 881 (citations omitted) (emphasis added).[4]

---

4. We recognize the majority of courts have interpreted *Carney* and *Johns* as not requiring exigent

[¶ 26] We believe *Johns* is correctly premised on the notion that a subsequent search of a vehicle at the station is no greater intrusion on one's privacy interests than a search of the vehicle when it was initially seized. A later search of a vehicle at the station is permissible, we believe, because the police are only doing later what they could have done earlier.[5] We conclude Deputy Kilde's impoundment and subsequent search of Garrett's vehicle was not unreasonable under the Fourth Amendment.

[¶ 27] In his brief, Garrett makes an additional challenge to the search and seizure of his vehicle. He claims the seizure of his vehicle was impermissible because the impound inventory record lists "abandoned" as the reason for the impoundment, and his vehicle had not been abandoned under N.D.C.C. § 39–26–02 (remaining on public property parked illegally for more than forty-eight hours). The impound record, however, also lists "evaluation of evidence" as another reason for the impoundment. We conclude these notations on the vehicle impound record do not taint the propriety of the search and seizure of evidence in Garrett's vehicle, because they were justified by the beer found in "plain sight" on the front seat of the vehicle.

### III.

[¶ 28] Garrett alleges the trial court should have suppressed the evidence related to his March 30, 1997, DUI and minor in possession charges because Officer Locke and Deputy Kilde did not have a reasonable and articulable suspicion to make an investigative stop.[6] We disagree.

[¶ 29] As we stated in *State v. Kenner*, 1997 ND 1, ¶ 8, 559 N.W.2d 538, "The law governing the investigative stops of vehicles is clear. An officer must have a reasonable and articulable suspicion that a motorist has violated or is violating the law in order to legally stop a vehicle." Here, Kilde approached Garrett, who was sitting in his vehicle, in response to Officer Locke's radio report that Garrett had been involved in a fight. This report was sufficient to establish a reasonable and articulable suspicion for the stop, as it provided an "objective manifestation" that Garrett had "engaged in unlawful activity." *State v. Smith*, 452 N.W.2d 86, 88 (N.D.1990).

[¶ 30] As we noted in *Kenner*, 1997 ND 1, ¶¶ 11–13, 559 N.W.2d 538, reasonable and articulable suspicion for an investigatory stop can be provided by reports from other officers, tips from informants, and from the stopping officer's own observations. *See also City of Fargo v. Ovind*, 1998 ND 69, ¶¶ 9–10, 575 N.W.2d 901. Here, Locke's report to Kilde that Garrett had been in a fight provided Kilde with a "reasonable and articulable suspicion" to approach Garrett and investigate the fight. Although Kilde did not witness the fight, it was reasonable for him to rely on Locke's report. *See City of Wahpeton v. Roles*, 524 N.W.2d 598, 600 (N.D.1994)

---

circumstances of any kind to justify the taking of a vehicle to the station after probable cause is established on the scene. *See* 3 W. LaFave, *supra* § 7.2(b), at 477–78 n. 76. We, of course, also recognize a state court, as a matter of state constitutional law, may require some degree of exigent circumstances. *See, e.g., People v. Edwards*, 836 P.2d 468, 471–72 (Colo.1992); *see also* 3 W. LaFave, *supra* § 7.2(b), at 478 n. 76. Since the issue was not briefed or argued to this Court, we decline to rule on this issue. We note, however, there were sufficient exigent circumstances in the case at hand to warrant impoundment of the car. The record reflects it was late at night, Garrett was still at large, and the officers were busy controlling the party they had discovered.

5. Like the Court in *Johns*, we do not suggest here that the police are at liberty to indefinitely retain possession of a vehicle and its contents before they complete a vehicle search. *See Johns*, 469 U.S. at 487, 105 S.Ct. 881. The owner of a vehicle still has the recourse of proving a delay in the search of a vehicle is unreasonable because it adversely affected a privacy or possessory interest. *Id.*

6. Here, the record indicates Garrett's car was already stopped when Kilde approached it. It is not clear whether Locke had stopped the car or whether Garrett had remained parked as Kilde approached. In either event, we conclude Kilde's approach and questioning of Garrett inside his car was an investigatory "stop" as defined in *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 8, 571 N.W.2d 137 (quoting *State v. Sarhegyi*, 492 N.W.2d 284, 285–86 (N.D.1992)): "A 'stop' is a temporary restraint of a person's freedom resulting in a seizure within the meaning of the Fourth Amendment."

("The reason to stop a vehicle need not come solely from the stopping officer's own observations, but can come from another officer.").

[¶ 31] Garrett's only challenge to the two charges from the March 30, 1997, incident is that there was no reasonable and articulable suspicion for the investigative stop. Because the record here indicates otherwise, we agree with the trial court that Kilde

did have a reasonable and articulable suspicion to stop Mr. Garrett and, after smelling the odor of alcoholic beverages on him, to further investigate and ultimately to arrest him for driving under the influence. At the station house and pursuant to arrest, the officer was entitled to search Mr. Garrett before placing him in the jail, or the jailers were, and the resulting disclosure or finding of the alcoholic beverage was lawful.

Accordingly, we affirm the trial court's denial of the suppression motions regarding the March 30, 1997, incident.

[¶ 32] All three judgments of conviction entered in this matter on April 20, 1998, are affirmed.

[¶ 33] VANDE WALLE, C.J., MESCHKE and SANDSTROM, JJ., and WILLIAM W. McLEES, District Judge, concur.

[¶ 34] WILLIAM W. McLEES, District Judge, sitting in place of NEUMANN, J., disqualified.

