2012 ND 198

**STATE of North Dakota, Plaintiff and Appellee**

v.

**William Scott GAGNON, III, Defendant and Appellant.**

**No. 20110311.**

Supreme Court of North Dakota.

Sept. 25, 2012.

Mark Ashley Flagstad, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Robert Wade Martin, North Dakota Public Defenders' Office, Minot, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] William Scott Gagnon III appeals a criminal judgment entered on a conditional plea of guilty to manufacturing marijuana. He reserved his right to appeal the denial of his motion to suppress evidence discovered in his residence. Gagnon argues the evidence was unconstitutionally seized during an illegal warrantless search of his home. We reverse the judgment, remand to allow Gagnon to withdraw his guilty plea and for further proceedings.

I

[¶ 2] On May 28, 2010, North Dakota Department of Parole and Probation Officer Mike Nason was in Douglas, North Dakota, volunteering as a campaigner for a Ward County Sheriff's candidate. While distributing campaign information, Nason saw two marijuana plants in a window in the back of Gagnon's residence. On May 29, 2010, Nason contacted the North Dakota Bureau of Criminal Investigation ("BCI") and reported observing the marijuana.

[¶ 3] On June 3, 2010, Special Agent Steve Niebuhr of the BCI traveled to Douglas. At approximately 1:30 p.m., he parked his vehicle on a public street outside Gagnon's residence. Using binoculars while on the public street, Niebuhr observed two marijuana plants in the window of Gagnon's residence. Niebuhr radioed for assistance, and three officers from the Ward County Narcotics Task Force responded. At approximately 2:10 p.m., Niebuhr and the other officers approached Gagnon's residence. Niebuhr and Trevor Huber approached the front and knocked on the door while the other two officers covered the back. Without

opening the door, a female inside the residence called for Niebuhr and Huber to "come in." Niebuhr opened the door and was met by Tara Yellowbird, who lived in the residence. Niebuhr asked Gagnon and Yellowbird for consent to search the residence. They refused. Niebuhr told Gagnon that because he and the other officers had seen marijuana plants in the window, the premises would be secured until a search warrant was obtained. Niebuhr walked through the inside of the residence.

[¶ 4] At approximately 2:16 p.m., while Niebuhr was walking through the residence, Gagnon told Huber he would consent to a search. Gagnon and Yellowbird signed a joint "Consent to Search" form. The officers seized a total of 54 marijuana plants from inside and outside the residence, a pill container used to store marijuana and a marijuana smoking device.

[¶ 5] Gagnon was charged with manufacture of marijuana and possession of drug paraphernalia. He moved to suppress all evidence, arguing the warrantless search of his home was unconstitutional because he did not consent until after law enforcement violated his constitutional rights. Gagnon alleged several violations occurred including Nason's initial entry onto his property, Niebuhr's use of binoculars to view the interior of the residence, Niebuhr and Huber's entry into the residence despite the presence of "No Trespassing" signs and Niebuhr's walk through the residence. Without separately addressing the alleged violations, the district court denied the motion, concluding the search fell within the consent and plain view exceptions to the warrant requirement. Gagnon entered a conditional plea of guilty to manufacturing marijuana. The possession of drug paraphernalia charge was dismissed.

## II

[¶ 6] Gagnon argues law enforcement illegally entered and conducted a number of illegal searches of his residence before he consented to the search. We address only Gagnon's contention that Niebuhr's walk through the residence was illegal because it is dispositive of this appeal.

[¶ 7] Gagnon argues Niebuhr's walk through the residence was an illegal warrantless search. The State responds it was reasonable for Niebuhr to walk through the residence "to ascertain that there were no other individuals present that could pose any threat to the officers or destroy evidence while the search warrant was being sought." We affirm a district court's disposition of a motion to suppress if, after resolving conflicting evidence in favor of affirmance, sufficient competent evidence fairly capable of supporting the district court's findings exists and the decision is not contrary to the manifest weight of the evidence. *State v. Mitzel*, 2004 ND 157, ¶ 10, 685 N.W.2d 120. Our standard recognizes the importance of the district court's opportunity to observe the witnesses and assess credibility and the deference we give to the district court's factual findings in suppression matters. *Id.* Whether a factual finding meets a legal standard is a question of law that is fully reviewable on appeal. *Id.*

[¶ 8] The Fourth Amendment of the United States Constitution and Article I, Section 8 of the North Dakota Constitution protect individuals from unreasonable searches and seizures. A search occurs when the government intrudes upon an individual's reasonable expectation of privacy. *Mitzel*, 2004 ND 157, ¶ 11, 685 N.W.2d 120. "Warrantless searches inside a person's home are presumptively unreasonable." *Id.* However, a warrantless search of a home is not unreasonable if it

falls under a recognized exception to the warrant requirement. *Id.* Evidence discovered during a warrantless search when no exception exists must be suppressed under the exclusionary rule. *Id.* at ¶ 12.

[¶ 9] The State argues Niebuhr's "quick walk" through Gagnon's residence was lawful under the United States Supreme Court's decision in *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). Segura was suspected of trafficking cocaine from his apartment. *Id.* at 799, 104 S.Ct. 3380. After watching Segura for a period of time, officers arrested Segura in the lobby of his apartment building at approximately 11:15 p.m. *Id.* at 799–800, 104 S.Ct. 3380. The officers then took Segura to his third floor apartment and entered without requesting or receiving permission. *Id.* at 800, 104 S.Ct. 3380. The officers found four individuals in Segura's living room. *Id.* After informing the individuals Segura was under arrest and a search warrant was being obtained, the officers "conducted a limited security check of the apartment to ensure that no one else was there who might pose a threat to their safety or destroy evidence." *Id.* at 800–01, 104 S.Ct. 3380. During the security check, the officers viewed but did not seize evidence of drug trafficking that was in plain view. *Id.* at 801, 104 S.Ct. 3380. Segura and the others were removed from the apartment, and two officers remained in the apartment to wait for a warrant. *Id.* A warrant was issued and the apartment was searched at approximately 6:00 p.m. the next day. *Id.*

[¶ 10] Although the security check in *Segura* was similar to the walk through in this case, the *Segura* Court clearly stated the legality of the security check was not at issue:

"At the outset, it is important to focus on the narrow and precise question now before us. As we have noted, the Court of Appeals agreed with the District Court that the initial warrantless entry and the limited security search were not justified by exigent circumstances and were therefore illegal. No review of that aspect of the case was sought by the Government and no issue concerning items observed during the initial entry is before the Court. The only issue here is whether drugs and the other items not observed during the initial entry and first discovered by the agents the day after the entry, under an admittedly valid search warrant, should have been suppressed."

468 U.S. at 804, 104 S.Ct. 3380. After defining the issue before it, the Court considered whether the officers unreasonably seized Segura's apartment by entering and remaining on the premises while a search warrant was obtained. *Id.* at 805–10, 104 S.Ct. 3380. In upholding the officers' actions, the Court noted the distinction between warrantless searches and warrantless seizures:

"We hold, therefore, that securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents. We reaffirm at the same time, however, that, absent exigent circumstances, a warrantless search—such as that invalidated in *Vale v. Louisiana*, 399 U.S. 30, 33–34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970)—is illegal."

*Segura*, at 810, 104 S.Ct. 3380. Because the *Segura* Court considered the time after the officers entered and remained in the apartment while Segura was in police custody and not the security search of the apartment, the State's reliance on *Segura* is misplaced. The proper inquiry here is not whether the walk through was an un-

reasonable seizure but whether it was an unreasonable search.

[¶ 11]   The district court found the warrantless search of Gagnon's residence was justified by the consent and plain view exceptions to the warrant requirement. Because Gagnon did not consent until after Niebuhr began walking through the residence, we must assume the district court determined the walk through was justified because the marijuana plants were in plain view.

[¶ 12]   The "plain view" doctrine only applies when an officer is legitimately in a constitutionally protected area. *State v. Gronlund*, 356 N.W.2d 144, 147 (N.D.1984) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). "Plain view alone . . . is never enough to justify the warrantless search or seizure of evidence." *State v. Garrett*, 1998 ND 173, ¶ 16, 584 N.W.2d 502. Therefore, standing alone, the fact that the officers standing on a public street observed marijuana plants inside the home was not sufficient to justify a warrantless search of Gagnon's residence.

[¶ 13]   The State asserts the need to prevent destruction of evidence and to protect officer safety were exigent circumstances justifying Niebuhr's walk through the residence. We have recognized that evidence in plain view may be seized if exigent circumstances exist. *Gronlund*, 356 N.W.2d at 147. Exigent circumstances are a recognized exception to the warrant requirement. *State v. DeCoteau*, 1999 ND 77, ¶ 14, 592 N.W.2d 579. We have defined exigent circumstances as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Id.* at ¶ 15 (quotation omitted). "The government has the burden to demonstrate exigent circum-

stances to overcome the presumption a warrantless search is unreasonable." *Id.* The ultimate determination whether the facts constitute exigent circumstances is a question of law that we review de novo. *Id.*

[¶ 14]   The timeline of events in this case does not support the conclusion a warrantless search was necessary to avoid imminent destruction of evidence. Nason observed marijuana in Gagnon's window on May 28 and reported his observation to the BCI on May 29. When Niebuhr traveled to Douglas on June 3, marijuana plants were still in Gagnon's window. Following Niebuhr's initial observation, the plants remained in the window for approximately forty minutes while Niebuhr waited for additional officers. Nothing in the record indicates destruction of the plants became imminent when the additional officers arrived. To the contrary, Gagnon's failure to remove the marijuana from the window and Yellowbird's invitation that the officers "come in," indicate Gagnon and Yellowbird were unaware their residence was being observed by law enforcement until Niebuhr and Huber walked in their door. Finding a warrantless search was justified under these circumstances would permit law enforcement to create an exigency by deciding to approach the residence without a warrant despite ample opportunity to obtain one. In addition, nothing in the record indicates the safety of the officers or any other person was threatened before the officers approached Gagnon's residence. The State argues that after Niebuhr and Huber entered the residence, their safety was a concern because an unidentified person could have been inside. The presence of unidentified persons inside a residence always will be a possibility and that possibility, without more, does not create an exigency sufficient to justify a warrantless search. *See*

*United States v. Waldner*, 425 F.3d 514, 517 (8th Cir.2005) (holding a protective sweep of an office violated the Fourth Amendment when "there [was] no evidence that the officers had any articulable facts that an unknown individual might be in the office, or anywhere else in the house, ready to launch an attack"). This is especially true when any limitations on law enforcement entry would have and could have been eliminated during the ample time—here days—available to secure a warrant. Under the facts of this case, we conclude that neither the possibility of the destruction of evidence nor the need to protect officer safety were exigent circumstance justifying a warrantless search.

[¶ 15] Niebuhr's walk through Gagnon's residence was an unreasonable warrantless search. Because of our resolution of this issue, we need not address the other issues raised.

### III

[¶ 16] We reverse the judgment, remand to allow Gagnon to withdraw his guilty plea and for further proceedings.

[¶ 17] MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 18] I agree with the dissent that officer safety is an extremely important factor in determining whether or not exigent circumstances exist which may justify a search as an exception to the requirement of a search warrant under the Fourth Amendment of the United States Constitution. However, I agree with the majority that such circumstances do not exist under the facts of this case.

[¶ 19] In *State v. Mitzel*, 2004 ND 157, ¶ 23, 685 N.W.2d 120, the majority concluded that the facts of that case do not "show an emergency requiring swift action to prevent imminent danger to life or property" and that "exigent circumstances do not justify the search of Mitzel's apartment" and that "no exceptions to a warrantless search apply" so that "the officer's action in following Mitzel through his home constitutes an unlawful search."

[¶ 20] I dissented to the majority opinion because the facts in that case revealed the officers were sent to the home to investigate a report of a domestic disturbance, the police were invited into the home and, although there was initially no consent to search the home, I concluded the officer was entitled to follow Mitzel to the back bedroom, because "[i]t is well known that law enforcement officers may be in considerable danger when called to the scene of domestic violence" and "the officer was invited into the home and told by the defendant he had been arguing with his girlfriend, who was not visible in the home." *Id.* at ¶ 36. I concluded that the officer out of concern for the woman and his own protection was justified under the exigent-circumstances exception to the warrant requirement of the Fourth Amendment in following Mitzel to the rear of the home.

[¶ 21] Here the facts are considerably different. This was not a domestic disturbance, the officers were not called to the home, the officers had observed the marijuana plants a week before and there was no indication the plants would be destroyed before a search warrant was obtained. There were no exigent circumstances which required the officers to enter the home before they obtained a search warrant. Rather, the officers were granted entrance to the home at their request when there was no good reason to do so before obtaining a search warrant. Under those facts I cannot

conclude exigent circumstances justified the search of the house. If there were exigent circumstances they were created by the officers' entry into the home without a warrant when one would have been required to search the home. I therefore concur in the result reached by the majority opinion.

[¶ 22]   MARY MUEHLEN MARING, J., concur.

KAPSNER, Justice, concurring.

[¶ 23]   Justice Sandstrom's reliance upon *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), as support for the "protective sweep" of the residence is misplaced. He fails to articulate the holding in *Buie:*

> We conclude that the Fourth Amendment would permit the protective sweep undertaken here if the searching officer "possesse[d] a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]' the officer in believing," that the area swept harbored an individual posing a danger to the officer or others.

*Buie*, 494 U.S. at 327, 110 S.Ct. 1093 (citations omitted).

[¶ 24]   He notes that police might look in closets and other spaces immediately adjoining the area of arrest from which an attack might be launched, but fails to quote the remainder of the paragraph in *Buie:*

> Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Buie*, 494 U.S. at 334, 110 S.Ct. 1093.

[¶ 25]   The Supreme Court in *Buie* also was cautionary that such searches are not automatic:

> [M]oreover, it is decidedly not "automati[c]," but may be conducted only when justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene.

*Buie*, 494 U.S. at 336, 110 S.Ct. 1093.

[¶ 26]   The facts in *Buie* were decidedly different. Police were on the premises with an arrest warrant for an armed robbery suspect. There are no specific and articulable facts demonstrated in this record that the residence harbored an individual dangerous to the officers. Authorizing the search under the circumstances in this case would indeed make "protective sweeps" automatic.

[¶ 27]   CAROL RONNING KAPSNER

SANDSTROM, Justice, dissenting.

[¶ 28]   Concluding that with probable cause to arrest, the officer was entitled to do a warrantless safety sweep of the trailer home, I respectfully dissent. Additionally, if the sweep had not been permissible, suppression of the evidence would not have been appropriate.

I

[¶ 29]   As the majority notes, at ¶¶ 2–3, after receiving a tip from North Dakota Department of Parole and Probation Officer Mike Nason that two marijuana plants were growing in William Gagnon's residence and were visible through a window, Special Agent Steve Niebuhr parked his vehicle on a public street outside Gagnon's residence and, using binoculars, observed two marijuana plants in the window of

Gagnon's residence. Agent Niebuhr testified at a suppression hearing that he and three other officers conducted a "knock and talk" at Gagnon's residence after he confirmed Officer Nason's tip. "Knock and talks" are a legitimate police practice. *See State v. Page*, 277 N.W.2d 112, 116–17 (N.D.1979). Agent Niebuhr testified he twice knocked on the front door of the Gagnon residence and a female from inside the residence twice called for Agent Niebuhr and another officer to "come in" to the residence. Consent is a valid exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). After receiving consent to enter the residence, Agent Niebuhr opened the front door and was met by Tara Yellowbird, who lived at the residence. Although Gagnon and Yellowbird did not initially consent to a search of the residence, Agent Niebuhr had validly entered the residence and had probable cause to arrest them on the basis of his viewing from a public street two marijuana plants in Gagnon's window.

[¶ 30] Because probable cause to arrest already existed here, this case is unlike *State v. Mitzel*, 2004 ND 157, ¶¶ 3–4, 685 N.W.2d 120, in which probable cause to arrest was developed through the safety sweep, and we reversed.

[¶ 31] The majority, at ¶ 15, concludes Agent Niebuhr's walk through Gagnon's residence was an unreasonable warrantless search. The conclusion is misplaced, however, because incident to a valid arrest, law enforcement officers may conduct a protective sweep to secure the premises to protect the officers' safety under appropriate circumstances. *See Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *Segura v. United States*, 468 U.S. 796, 810, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

[¶ 32] In *Buie*, the United States Supreme Court held "that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334, 110 S.Ct. 1093.

[¶ 33] Here the record establishes that the safety sweep was of the trailer home in which the officers were present. Reasonably, an attack could have been immediately launched from anywhere within the trailer home.

[¶ 34] The Court in *Buie* said more was required if officers are going to go beyond "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." As the Court explained, "Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* And *Buie* did involve going beyond "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." In *Buie*, law enforcement swept the first and second floors of the house and the basement. It was in the basement that the incriminating evidence was found. *Id.* at 328, 110 S.Ct. 1093. Since the sweep went beyond "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched," in *Buie*, reasonable suspicion was required.[1]

---

1. Respectfully, as illustrated by the Fifth Circuit cases discussed in the following paragraph, Justice Kapsner's concurring opinion misreads *Buie* and would nullify a key sen-

[¶ 35] In *United States v. Mata*, 517 F.3d 279 (5th Cir.2008), the court explained the three variations for "safety personnel sweeps":

First, incident to an arrest, law enforcement officers may contemporaneously search areas within the arrestee's immediate control to prevent the destruction of evidence or procurement of a weapon. Second, *officers may search areas immediately adjoining the place of arrest, such as closets and other spaces, from which a surprise attack could occur.* Probable cause or reasonable suspicion is not necessary for these first two variations. Third, officers may also perform cursory "protective sweeps" of larger areas if they have articulable facts plus rational inferences that allow a reasonable officer to suspect that an individual dangerous to the officers is within the area to be searched.

*Mata*, 517 F.3d at 285 (emphasis added) (footnotes omitted). The court concluded a "safety sweep" of a separate garage at Mata's place of business did not meet the criteria, because it was not an area "immediately adjoining the place of arrest, such as closets and other spaces, from which a surprise attack could occur." *Id.* at 285–86. But the Fifth Circuit explained that a safety sweep of a proximate smaller area is permissible:

In *United States v. Charles*, [469 F.3d 402 (5th Cir.2006),] this Court upheld a precautionary search when officers quickly entered a 10′ by 25′ storage unit in which they found the defendant. The officers approached the storage unit, ordered the defendant outside, and arrested him without a warrant. One officer quickly entered the unit, which contained a car, to check beneath, behind, and inside the car to confirm no other person was hiding. During this brief

tence of the United States Supreme Court

entrance, the officer noticed in plain view narcotics and a firearm. Charles argued that once he was outside the unit nothing inside was within his immediate control and that the officer lacked articulable facts justifying the sweep. This court concluded that the officers were justified in searching the unit because [*Maryland v.*] *Buie*[, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990),] held that police may as a precautionary matter and without probable cause or reasonable suspicion look in closets and spaces immediately adjoining the place of arrest from which an attack could be launched.

*Id.* (footnotes omitted). Our case here is much more in line with *Charles*, in which the protective sweep was upheld, than with *Mata*, in which a separate, large building was involved, or *Buie*, in which three levels of the house were swept.

[¶ 36] As the United States Supreme Court emphasized in *Buie*, "such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Id.* And, again, that is what the record reflects happened in this case.

[¶ 37] It is of no consequence the arrest contemporaneously followed the protective sweep. *See Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (holding "[w]here the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa," so long as the fruits of the search were "not necessary to support probable cause to arrest");

holding.

*State v. Overby,* 1999 ND 47, ¶ 8, 590 N.W.2d 703. In addition, the majority, at ¶ 10, cites the *Segura* Court, which stated:

"We hold, therefore, that securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents. We reaffirm at the same time, however, that, absent exigent circumstances, a warrantless search—such as that invalidated in *Vale v. Louisiana,* 399 U.S. 30, 33–34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970)—is illegal."

(Quoting *Segura,* 468 U.S. at 810, 104 S.Ct. 3380.) The majority uses the quoted *Segura* language to conclude the Court did not decide whether the security search was illegal, but rather only "considered whether the officers unreasonably seized Segura's apartment by entering and remaining on the premises while a search warrant was obtained." The majority then concludes the "proper inquiry here is not whether the walk through was an unreasonable seizure but whether it was an unreasonable search."

[¶ 38]   On the basis of *Buie* and *Segura,* Agent Niebuhr's protective sweep to secure the residence incident to Gagnon's arrest was not an unreasonable warrantless search or seizure. *Buie,* 494 U.S. at 334, 110 S.Ct. 1093; *Segura,* 468 U.S. at 810, 104 S.Ct. 3380. A review of the record establishes there is no testimony showing Agent Niebuhr "searched" the residence or did anything other than secure the residence for the officers' safety or to prevent the destruction of evidence. Conversely, Agent Niebuhr testified he walked through the residence to ensure that no one else who could cause the officers harm or destroy or remove evidence was in the residence.

[¶ 39]   Additionally, even if Agent Niebuhr had testified to having seen marijuana plants inside the residence during his protective sweep, which he did not, the majority erroneously applies the "plain view" doctrine to the facts in this case. The majority concludes, at ¶ 12, the "plain view" doctrine did not apply as an exception to the warrant requirement because Agent Niebuhr observed the marijuana plants standing on a public street outside the residence and "[p]lain view alone ... is never enough to justify the warrantless search or seizure of evidence." (Quoting *State v. Garrett,* 1998 ND 173, ¶ 16, 584 N.W.2d 502.) Yellowbird, however, consented to the officers' entering the residence, thereby placing the officers in a constitutionally protected area. *See Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Because Agent Niebuhr validly conducted a protective sweep incident to Gagnon's arrest and because he was in a constitutionally protected area on the basis of Yellowbird's consent to enter the residence, Agent Niebuhr could have validly seized any evidence of a crime during his walk through the residence. *See id.* As a result, Agent Niebuhr's walk through the residence incident to Gagnon's arrest was not an unreasonable warrantless search.

[¶ 40]   Agent Niebuhr's safety sweep was reasonable under the Fourth Amendment.

II

[¶ 41]   Even if the safety sweep had not been reasonable, the suppression of the evidence would not be appropriate. No evidence was seized in the safety sweep. The officers had already seen the marijuana in the window before the safety sweep. They were going to go to get a search warrant when both occupants signed a consent to search.

384

[¶ 42] As the United States Supreme Court explained in *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988):

> The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and of testimony concerning knowledge acquired during an unlawful search, *Silverman v. United States,* 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes "so attentuated [sic] as to dissipate the taint," *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). *See Wong Sun v. United States,* 371 U.S. 471, 484–485, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963).
>
> Almost simultaneously with our development of the exclusionary rule, in the first quarter of this century, we also announced what has come to be known as the "independent source" doctrine. *See Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). That doctrine, which has been applied to evidence acquired not only through Fourth Amendment violations but also through Fifth and Sixth Amendment violations, has recently been described as follows:
>
> > "[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced *by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred....* When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984).

*Murray,* 487 U.S. at 536–37, 108 S.Ct. 2529 (emphasis added).

[¶ 43] Under the circumstances of this case, the police obtained no evidence as a result of the sweep. Under the United States Supreme Court criteria, there is nothing properly excludable.

### III

[¶ 44] I would affirm the district court judgment.

[¶ 45] DALE V. SANDSTROM