2014 ND 4

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Alicia Marie HART, Defendant and Appellant.**

**State of North Dakota, Plaintiff and Appellee**

v.

**Paul Timothy Sitte, Defendant and Appellant.**

**Nos. 20130165, 20130168.**

Supreme Court of North Dakota.

Jan. 14, 2014.

Julie A. Lawyer, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Thomas J. Glass, Bismarck, ND, for defendant and appellant Alicia Marie Hart; submitted on brief.

Thomas M. Tuntland, Mandan, ND, for defendant and appellant Paul Timothy Sitte.

VANDE WALLE, Chief Justice.

[¶ 1] Alicia Hart appealed from a criminal judgment for possession of drug paraphernalia after entering a conditional guilty plea reserving the right to appeal the denial of her motion to suppress. Paul Timothy Sitte appealed from a criminal judgment for possession of hashish, possession of methamphetamine drug paraphernalia, and possession of marijuana drug paraphernalia after also entering a conditional guilty plea reserving the right to appeal the denial of his motion to suppress. We reverse the judgments and remand to allow Hart and Sitte to withdraw their guilty pleas and for further proceedings consistent with this opinion.

I

[¶ 2] This consolidated appeal arises out of two separate criminal cases involving the same facts. In August 2012, police received an anonymous "crime stoppers tip" that Chad Grubb and his girlfriend were selling methamphetamine from a residence at 411 North 12th Street in Bismarck. The tip stated that Grubb was traveling back and forth from Minneapolis to purchase drugs and bring them into the Bismarck area. Police verified that the Burleigh County Sheriff's Department had a bench warrant for Grubb for driving under the influence and driving under suspension.

[¶ 3] Deputies went to the 12th Street residence to serve the misdemeanor bench warrant on Grubb. The residence was a duplex containing separate upstairs and downstairs units. After conducting surveillance on the duplex, police made contact with Chris Giroux as he came up from the downstairs unit. Giroux told the officers that Grubb was not at the duplex. Police asked for permission to search the residence to ascertain that Grubb was not present. Giroux consented to the search. As police searched the downstairs unit of the duplex, Michael Darwin, who lived in the upstairs unit, arrived at the scene. Darwin gave consent to the police to search the upstairs portion of the duplex. Police discovered marijuana paraphernalia and "a handgun in the southwest bedroom of the residence...." "[A]t one point a locked gun safe on the wall was entered and in a soft sided case was what appeared to be a large amount of methamphetamine and a semiautomatic handgun." The locked gun safe containing the gun was located in a common area laundry room.

[¶ 4] Officers questioned the occupants and learned that Grubb had been at the duplex earlier in the day but left with Paul Sitte in a red pickup truck "after grabbing some of his stuff from there." None of the occupants of the duplex were able to verify what "stuff" Grubb had taken with him when he left. Officers determined that Sitte lived at 226 West Divide Avenue in Bismarck ("Sitte residence"). Deputy Kelly Leben went to the Sitte residence, where from a distance, he observed a red pickup and two males in the driveway. He

was not able to identify Grubb based on the warrant photo. Deputy Leben observed the two males "take something out of the vehicles and carry it into the residence. And not come back out." Deputy Leben testified, "[o]ne of the things I did see that I recalled was a pop container, like a 12 pack pop container."

[¶ 5] Sergeant Macdonald and Deputy Glovich arrived at the scene to provide backup while Deputy Leben served the bench warrant. The officers covered the front and back of the Sitte residence. Deputy Leben bypassed the front door at the entrance of the house and walked through an open vehicle-garage door. The garage is attached to the house. The entry door in the garage provides access into the house from the garage. Deputy Leben testified, "I started knocking on the door and didn't receive any answer. At that point it was just a short proximity from when they disappeared in the house. So I again started knocking on the door harder, and announcing, 'Sheriff's Department. Come to the door.' " Deputy Leben stated, it was just a short time before the door was answered, "[b]ut longer than I expected for somebody that had just gone in the house." Grubb opened the door, identified himself, and was arrested. Grubb did not resist and was arrested in the "foyer area" of the residence. The district court found, "Leben chose to enter the Sitte house to place Grubb under arrest instead of asking Grubb to exit the house and arrest him in the garage."

[¶ 6] Deputy Leben testified he asked Grubb, " '[w]ho else is in the house with you?' Because I had seen the two people in the driveway. And he told me nobody." Officers began "challenging the house," yelling "[w]hoever's in here, come out." Deputy Leben further stated that the officers were concerned for their safety. "[W]e had found the large amount of meth-amphetamine and two handguns at that [duplex] residence. So based on that information, and the fact that Chad Grubb was associated now with both residences, I had a concern for officer safety based on the amount of drugs and the firearms." Deputy Leben also testified, he was unsettled with the "uncooperativeness in not opening the door immediately," and the estimated "half ounce to three quarters of an ounce" of methamphetamine police discovered at the duplex. "[A]t that point we're not dealing with a user type amount, and also we're dealing with methamphetamine. Which basically, based on my experience, education and training, is probably one of the worse drugs our community is facing right now."

[¶ 7] After arresting Grubb, officers conducted a "protective sweep" into the Sitte residence. Sitte was arrested after he was discovered on a couch in an upstairs living room. Deputy Sheriff Macdonald testified he observed drug paraphernalia in Sitte's vicinity, including "a little baggy that had kind of residue look on it too. There was a bunch of razor blades on the floor around him. And there was also what's call[ed] foilies, little pieces of tin foil." Sitte appeared to be under the influence or very lethargic. Deputy Leben testified officers attempted to ascertain whether Sitte was actually under the influence or faking it because "he couldn't have been the guy I saw in the driveway."

[¶ 8] Officers continued their sweep and encountered a locked upstairs door. Officers did not attempt to open the door but extended their sweep into the downstairs level of the residence. Officers came across another locked door in the basement. The Metro Area Narcotics Task Force arrived soon after and broke down the two locked doors. Alicia Hart was discovered in the locked basement room with drug paraphernalia in her

purse. After the Task Force finished clearing the house, police obtained a search warrant and discovered additional paraphernalia and drugs.

[¶ 9] Sitte and Hart each filed motions to suppress all the evidence seized from the Sitte residence, alleging the search and seizure violated their Fourth Amendment rights. The State argued there were exigent circumstances and that the protective sweep was permissible and resulted in the discovery of admissible evidence. Following an evidentiary hearing, the district court denied Sitte and Hart's motions to suppress.

## II

[¶ 10] In reviewing a denial of a motion to suppress:

> We affirm a district court's disposition of a motion to suppress if, after resolving conflicting evidence in favor of affirmance, sufficient competent evidence fairly capable of supporting the district court's findings exists and the decision is not contrary to the manifest weight of the evidence. Our standard recognizes the importance of the district court's opportunity to observe the witnesses and assess credibility and the deference we give to the district court's factual findings in suppression matters. Whether a factual finding meets a legal standard is a question of law that is fully reviewable on appeal.

*State v. Gagnon*, 2012 ND 198, ¶ 7, 821 N.W.2d 373 (internal citations removed).

## III

[¶ 11] Hart and Sitte argue there was no probable cause or exigent circumstances to justify the warrantless entry into Sitte's garage or house and that police conducted an unconstitutional protective sweep. They argue the warrantless searches and seizures violated the Fourth Amendment to the United States Constitution and Article I, Section 8 of the North Dakota Constitution.

[¶ 12] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. The North Dakota Constitution also safeguards individuals from unreasonable government searches and seizures. N.D. Const. art. I, § 8. "A search occurs when the government intrudes upon an individual's reasonable expectation of privacy." *Gagnon*, 2012 ND 198, ¶ 8, 821 N.W.2d 373. "A physical entry into a home is a chief evil against which the Fourth Amendment protects." *City of Jamestown v. Dardis*, 2000 ND 186, ¶ 8, 618 N.W.2d 495. Warrantless and non-consensual searches and seizures made inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590, 100 S.Ct. 1371.

[¶ 13] Evidence seized from a warrantless search, when no recognized exception to the warrant requirement exists, must be suppressed under the exclusionary rule. *Gagnon*, 2012 ND 198, ¶ 8, 821 N.W.2d 373. "[A]ll evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *see also State v. Gregg*, 2000 ND 154, ¶ 39, 615 N.W.2d 515 (stating, "[a]ny evidence obtained as a result of illegally acquired evidence must be

suppressed as 'fruit of the poisonous tree' unless an exception to the warrant requirement applies.").

[¶ 14] One well-recognized exception to the warrant requirement applies when " 'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, —— U.S. ——, ——, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). This Court has recently defined exigent circumstances as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Gagnon*, 2012 ND 198, ¶ 13, 821 N.W.2d 373. The Supreme Court of the United States has stated:

> Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries.

*Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). Thus, the burden is on the government to demonstrate the presence of exigent circumstances to overcome the presumption that the warrantless search and seizure is unreasonable under the Fourth Amendment. *See State v. Mitzel*, 2004 ND 157, ¶ 12, 685 N.W.2d 120 (stating, "[i]t is the State's burden to show that a warrantless search falls within an exception to the warrant requirement."). This Court applies a de novo standard of review to determine whether the facts constitute exigent circumstances. *Id.* at ¶ 19.

[¶ 15] Here, the facts clearly show that government officials conducted a warrantless search and seizure inside an area where Sitte and Hart had a reasonable expectation of privacy. In *Payton*, the United States Supreme Court held that the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton*, 445 U.S. at 576, 100 S.Ct. 1371. In the instant case, the police entered Sitte's open vehicle-garage door, passed through his garage, and entered into his home without consent to execute a routine misdemeanor bench warrant. Police did not have a search warrant based on probable cause to search the home. The burden is on the State to show that the warrantless search falls within an exception to the warrant requirement. *Mitzel*, 2004 ND 157, ¶ 12, 685 N.W.2d 120.

## IV

[¶ 16] The State argues law enforcement officers lawfully conducted a "protective sweep" of the residence. The State also contends that the officers were authorized to execute the protective sweep incident to Grubb's arrest because it was based on a reasonable and articulable concern for their safety. In *Buie*, the United States Supreme Court held:

> as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be

articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. *Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). The Court further noted that "a protective sweep, aimed at protecting the arresting officers ... [is] not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger...." *Id.* at 335–36, 110 S.Ct. 1093. Ultimately, the issue is whether the officers possessed a "reasonable belief" based on "specific and articulable facts," which, taken together with rational inferences drawn from those facts, reasonably warranted the officer in believing "that the area swept harbored an individual posing a danger to the officer or others." *Id.* at 327, 110 S.Ct. 1093.

[¶ 17] In *Gagnon*, a majority of this Court held that a warrantless police "walk through" of a residence violated the defendant's right against unreasonable searches and seizures. Because there was neither the possibility of destruction of evidence or the need to protect officer safety, we concluded exigent circumstances did not justify the search. *Gagnon*, 2012 ND 198, ¶ 15, 821 N.W.2d 373. The State argued, "it was reasonable for [officer] Niebuhr to walk through the residence 'to ascertain that there were no other individuals present that could pose any threat to the officers or destroy evidence while the search warrant was being sought.' " *Id.* at ¶ 7. We disagreed and determined that the timeline of events did not support the theory that a search was necessary to avoid imminent destruction of evidence. *Id.* at ¶ 21 (Vande Walle, J., concurring) (noting it was not a domestic disturbance, officers

were not called to the home, officers had observed the marijuana plants a week before, there was no indication the plants would be destroyed before a search warrant was obtained and there were no exigent circumstances which required officers to enter the home before they obtained a search warrant). Additionally, we held that, given the facts of the case, the State's argument for officer safety was unavailing. "The presence of unidentified persons inside a residence always will be a possibility and that possibility, without more, does not create an exigency sufficient to justify a warrantless search." *Id.* at ¶ 14.

[¶ 18] Similarly, in *Mitzel*, in the context of a domestic dispute, a majority of this Court determined that there were insufficient facts to abate the protections of the Fourth Amendment. This Court concluded:

> the police received a call from a neighbor who reported banging and yelling coming from inside Mitzel's apartment. There was no disturbance in progress when the officers arrived, and Mitzel informed the police that he and his girlfriend had had a fight and that they were both fine. There was no testimony that Mitzel was trying to prevent the police from entering the apartment or that he was being evasive. There was no testimony that Mitzel had any violent tendencies, and there were no initial signs of intoxication. There was no testimony to indicate that Mitzel was not calm, and there was no evidence of an altercation, such as blood, bruising, or raw knuckles. Mitzel asked whether the officers wanted to talk to his girlfriend, and he went to get her.

*Mitzel*, 2004 ND 157, ¶ 22, 685 N.W.2d 120. Because the facts did not "show an emergency requiring swift action to prevent imminent danger to life or property," exi-

gent circumstances did not justify the warrantless search of Mitzel's apartment. *Id.* at ¶ 23.

[¶ 19] In the instant case, the State argues the officers were justified in making the protective sweep for several reasons. Officers had previously uncovered large amounts of methamphetamine and two weapons at the duplex location from which Grubb was associated. Officers were also informed Grubb had been at the duplex and had taken "stuff" with him. Deputy Leben surveyed the Sitte residence from a distance and observed a red pickup truck and two unidentified men "take something out of the vehicles and carry it into the residence." After knocking on the door, Deputy Leben was concerned with the amount of time it took to answer and that Grubb told officers no one else was at the residence. Officers were also suspicious that more than one person was in the Sitte residence and that the other individual did not come to the door when ordered to do so. Essentially, the State contends that these facts, when taken together, gave the officers a "reasonable belief" "that the area swept harbored an individual posing a danger to the officer or others." *Buie*, 494 U.S. at 327, 110 S.Ct. 1093.

[¶ 20] We disagree and conclude the officers were not justified in making the protective sweep into Sitte's home. It is clear that the officers' decision to enter the Sitte residence was colored by their previous discovery of weapons and methamphetamine at the duplex. However, there is no evidence in the record which links Grubb to the drugs or weapons beyond the fact that he was at the duplex earlier in the day. At the suppression hearing, Deputy Leben testified "we didn't know whose gun and drugs they were. We just knew they were found." The search at the duplex simply did not reveal any concrete, articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbored an individual posing a danger to those on the arrest scene.

[¶ 21] Several other factors lead us to the conclusion the officers were not justified in executing the protective sweep as this was not "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Gagnon*, 2012 ND 198, ¶ 13, 821 N.W.2d 373. The catalyst of the warrant in this case was precipitated by an anonymous telephone call on the Crime Stopper's tip line. We have previously held that anonymous tips fall on the low end of the reliability spectrum. *See State v. Miller*, 510 N.W.2d 638, 641 (N.D.1994). Additionally, officers had no information that Grubb was dangerous or had violent tendencies. This is distinguishable from the facts in *Buie* which involved a felony armed robbery of a Godfather's Pizza restaurant. *Buie*, 494 U.S. at 328, 110 S.Ct. 1093. Here, Grubb's bench warrant was for a DUI and DUS, both non-violent misdemeanor crimes. *See Welsh*, 466 U.S. at 753, 104 S.Ct. 2091 (holding that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made."). When officers arrived at the Sitte residence, they were not able to verify the identity of Grubb or Sitte as either of the two males in the driveway. Officers were only able to verify the men had with them "a pop container, like a 12 pack pop container" nothing that was dangerous or illegal. Officers entered through the open garage attached to the house, rather than knocking at the front door. *See State v. Winkler*, 552 N.W.2d 347, 352 (N.D.1996) (concluding defendant had a reasonable ex-

pectation of privacy as to what could not be seen from outside his unattached garage, and officers' entry into the garage constituted a search requiring a warrant); *State v. Blumler*, 458 N.W.2d 300, 302 (N.D.1990) (stating a garage is an intimate part of a person's residence, and therefore, is an area in which a person has a reasonable expectation of privacy against warrantless intrusions by the State). Grubb answered the door in "just a short time," identified himself and did not resist arrest. Finally, Deputy Leben testified that, after Grubb was arrested, officers simply could have taken Grubb out through the garage and left the premises.

[¶ 22] We are aware of the ever-present dangers officers face in the line of duty. However, in balancing the significant equities between officer safety and the Fourth Amendment right against unreasonable searches and seizures, and given the facts of this case, the claim for officer safety does not outweigh the unreasonableness of the protective sweep at Sitte's residence. Expanding the protective sweep doctrine to these facts would go beyond the holding of *Buie*, and encroach upon the constitutional right of the people to be secure in their homes.

## V

[¶ 23] We conclude the protective sweep of the Sitte residence violated the Fourth Amendment. We reverse the judgments and remand to allow Hart and Sitte to withdraw their guilty pleas and for further proceedings consistent with this opinion.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, S.J., DALE V. SANDSTROM DANIEL J. CROTHERS and CAROL RONNING KAPSNER, JJ., concur.

[¶ 25] The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge MARY MUEHLEN MARING, sitting.