2014 ND 95

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Brian Alan KURUC, Defendant and Appellant.**

**State of North Dakota, Plaintiff and Appellee**

v.

**Rebecca Jean Larson, Defendant and Appellant.**

Nos. 20130334, 20130337.

Supreme Court of North Dakota.

May 8, 2014.

Kara Schmitz Olson, Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

Neil J. Roesler (argued) and Mark A. Friese (appeared), Fargo, ND, for defendant and appellant Brian Alan Kuruc.

Charles J. Sheeley, Fargo, ND, for defendant and appellant Rebecca Jean Larson.

VANDE WALLE, Chief Justice.

[¶ 1] Rebecca Larson appealed after she conditionally pled guilty to possession of marijuana with intent to deliver and possession of drug paraphernalia. Brian Kuruc appealed from a criminal judgment for possession of marijuana with intent to deliver, tampering with physical evidence, and possession of drug paraphernalia after also entering a conditional guilty plea. We conclude the district court properly denied Larson and Kuruc's motions to suppress evidence. We also conclude the district court did not err in excluding Larson and Kuruc's Washington medical marijuana prescriptions as a defense to the crimes of possession and possession with intent to deliver.

I

[¶ 2] This consolidated appeal arises from two separate criminal cases involving the same facts. On the morning of January 9, 2013, the Cass County Sheriff's Office received a complaint from a front desk clerk at the Days Inn hotel in Casselton concerning the odor of marijuana emanating from a room occupied by Brian Kuruc and Rebecca Larson. Deputies Swenson and Grabinger responded to the complaint. Upon arriving at the hotel at approximately 10:40 a.m., Deputies Swenson and Grabinger were informed by the front desk clerk that Kuruc requested a check-out time of 1:00 p.m., and that approximately six people were currently in the room. The officers detected the faint odor of marijuana in the lobby. They followed the scent to room 104, where the odor was "significantly stronger."

[¶ 3] Deputy Grabinger knocked on the door to room 104. Larson opened the door. Deputy Grabinger stepped across the threshold of the doorway, identified herself, and requested permission to further enter the room to investigate the complaint. Larson denied Deputy Grabinger's request and attempted to close the door. Deputy Grabinger lodged her foot against the door and prevented Lar-

son from closing it. Deputy Grabinger again requested permission to enter. Larson objected. Deputy Grabinger continued to keep her foot in the doorway, physically preventing the door from being shut. Larson remained on the other side of the door. The officers did not have a warrant.

[¶ 4] Maintaining her presence propped against the doorway, Deputy Grabinger told Larson and the other occupants they were not free to leave and again asked for permission to enter. Larson objected. During the impasse, Larson told the officers she had a medical marijuana prescription from the State of Washington and that there may be marijuana located in her rental car. Deputy Grabinger directed Deputy Swenson to apply for a search warrant. While Deputy Swenson sought a search warrant, Deputy Grabinger told the occupants they were being detained and to stay where they were.

[¶ 5] Through the open doorway, Deputy Grabinger observed Kuruc grasp a large duffle bag and enter the bathroom. Kuruc closed the bathroom door behind him and refused Deputy Grabinger's commands to leave. At that point, Deputy Grabinger pushed pass Larson and forcibly breached the bathroom door. The deputy observed Kuruc attempting to flush marijuana from the duffel bag down the toilet. Kuruc was arrested. The occupants were ordered into the hallway, detained, and read their Miranda rights. The hotel room was then locked.

[¶ 6] Narcotics officers arrived and asked for consent to search the room. A consent to search form was signed at approximately 11:49 a.m., and a search commenced. During the search, officers discovered marijuana and paraphernalia. A search warrant was ultimately obtained at 12:51 p.m. Contraband was also discovered in Larson's vehicle.

[¶ 7] Larson and Kuruc each filed a motion to suppress all the evidence, arguing police conducted an unreasonable search and seizure. The district court found that the warrantless entry into the hotel room was unreasonable and granted the motion to suppress to the extent it excluded Larson's incriminating statements, and evidence seized from her rental car. The court determined the remaining evidence discovered in the hotel was admissible under the independent-source doctrine. Larson and Kuruc also filed motions in limine seeking a court order allowing the introduction of their respective medical marijuana prescriptions from the State of Washington. The court denied the motions. Larson and Kuruc entered conditional pleas of guilty reserving the right to appeal the motions to suppress evidence and the motions in limine.

## II

[¶ 8]When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. A district court's findings of fact in a suppression hearing "will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the ... court's findings, and the decision is not contrary to the manifest weight of the evidence." Although underlying factual disputes are findings of fact, the ultimate conclusion of whether the facts meet a particular legal standard is a question of law, fully reviewable on appeal.

*State v. Nickel*, 2013 ND 155, ¶ 12, 836 N.W.2d 405 (citations omitted).

## III

[¶ 9] On appeal, Larson and Kuruc argue the district court erred in applying the

independent-source doctrine. They argue the search and seizure of the hotel room violated the Fourth Amendment and Article I, Section 8 of the North Dakota Constitution.

[¶ 10] The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, states, "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. The North Dakota Constitution similarly protects individuals from unreasonable government searches and seizures. N.D. Const. art. I, § 8.

[¶ 11] "A search occurs when the government intrudes upon an individual's reasonable expectation of privacy." *State v. Gagnon*, 2012 ND 198, ¶ 8, 821 N.W.2d 373. Warrantless and non-consensual searches inside a person's home are presumptively unreasonable. *State v. Mitzel*, 2004 ND 157, ¶ 11, 685 N.W.2d 120. "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Any physical invasion into the structure of the home, "by even a fraction of an inch," violates the Fourth Amendment. *Kyllo v. United States*, 533 U.S. 27, 37, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). "[T]here is certainly no exception to the warrant requirement for the officer who barely cracks open the front door and sees nothing but the nonintimate rug on the vestibule floor. In the home . . . *all* details are intimate details, because the entire area is held safe from prying government eyes." *Id.* (emphasis in original). The constitu-

tional protection against unreasonable searches and seizures also extends to hotel rooms. *Stoner v. State of Cal.*, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (stating, "No less than a tenant of a house, or the occupant of a room in a boarding house . . . a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures."); *see, e.g., State v. Gregg*, 2000 ND 154, ¶ 24, 615 N.W.2d 515.

[¶ 12] "Evidence discovered during a warrantless search when no exception exists must be suppressed under the exclusionary rule." *Gagnon*, 2012 ND 198, ¶ 8, 821 N.W.2d 373. A warrantless search of a home is not unreasonable if the search qualifies as a recognized exception to the warrant requirement. *Id.* One well-recognized exception to the warrant requirement applies when exigent circumstances make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. *State v. Hart*, 2014 ND 4, ¶ 14, 841 N.W.2d 735.

A.  Exigent Circumstances

[¶ 13] The State argues that Deputy Grabinger's entry into the hotel room to freeze its contents without a warrant was reasonable under the Fourth Amendment. The State contends Deputy Grabinger had good reason to fear that evidence would be destroyed if the room's occupants were not detained. The district court found that when the deputy inserted her foot and prevented the door from being closed she entered a protected space. The court also determined that, before the deputies announced their presence, there was no reason to fear the destruction of evidence or for officer safety.

[¶ 14] This Court has defined exigent circumstances as "an emergency sit-

uation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Hart,* 2014 ND 4, ¶ 14, 841 N.W.2d 735. Generally, when the exigency is created by law enforcement, officers cannot then bypass the warrant requirement and conduct a search based on the exigency. *See Gagnon,* 2012 ND 198, ¶ 14, 821 N.W.2d 373 (concluding law enforcement cannot create an exigency by deciding to approach a residence without a warrant despite ample opportunity to obtain one).

[¶ 15] Here, the exigency of destruction of evidence was created by the officer's actions in entering the constitutionally protected space. Although Larson and Kuruc had a 1:00 p.m. checkout time, there is nothing in the record to indicate law enforcement could not have secured a warrant prior to that time. Officers were aware of the specific room Larson and Kuruc were staying in and could have had the room under surveillance to assure the suspects did not leave. The record also suggests Larson and Kuruc did not know of the officers' presence. The facts simply do not reflect a situation involving the imminent escape of a suspect or destruction of the evidence until after police entered the room.

[¶ 16] Thus, as a preliminary matter, we conclude the officer did enter a constitutionally protected space when she stepped into the hotel room without a search warrant and without exigent circumstances. The district court did not err in finding that, because there were no exigent circumstances, the entry into the room was unreasonable. We next turn our analysis to determine whether the court erred when it applied the independent-source doctrine.

### B. Independent–Source Doctrine

[¶ 17] "Even though evidence may be characterized as fruit of the poisonous tree, it can be admitted if it was not produced by exploiting the illegally acquired information." *Gregg,* 2000 ND 154, ¶ 39, 615 N.W.2d 515. This process of "unpoisoning" the fruit of the illegal search may be achieved through the independent-source exception. *Id.* at ¶ 40. The independent-source doctrine allows the introduction of evidence that was initially discovered during, or as a result of an unlawful search, but that was later obtained independently from lawful activities that have not been tainted by the initial illegality. *Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). The doctrine "allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Gregg,* 2000 ND 154, ¶ 52, 615 N.W.2d 515.

[¶ 18] "[I]f an illegal entry occurred prior to seeking a warrant, the search pursuant to the warrant, in order to be valid, had to be based upon a source independent of the illegal entry." *State v. Winkler,* 1997 ND 144, ¶ 12, 567 N.W.2d 330. "The ultimate question . . . is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence." *State v. Winkler,* 552 N.W.2d 347, 353 (N.D. 1996). In making such a determination, this Court invokes a two-step analysis. *Id.* "First, the warrant must be supported by probable cause derived from sources independent of the illegal search; and second, the decision to seek the warrant must not be prompted by observations made during the illegal search." *Gregg,* 2000 ND 154, ¶ 54, 615 N.W.2d 515.

[¶ 19] Applying the first step of analysis, the application and affidavit for a search warrant contained facts indepen-

dent from and directly culled from the unreasonable search. In the affidavit supporting the search warrant application, Detective Gress stated:

On 01/09/2013, the Cass County Sheriff's Office received a complaint from staff at the Day's Inn hotel in Casselton for an odor of marijuana. Upon arrival Deputy Eric Swenson and Deputy Tonya Grabinger were able to smell what they know through their training and experience as a police officer to be the odor of marijuana coming from Room 104. Room 104 is currently being rented by Brian Alan Kurec [sic].

To that extent, the affidavit contained information derived from sources independent of the illegal search. That information alone was sufficient to meet the probable cause requirement for a search warrant under the Fourth Amendment. *See State v. Schmalz*, 2008 ND 27, ¶ 20, 744 N.W.2d 734 ("The mere smell of marijuana, as detected by a trained and experienced officer, has been held by this Court to create a sufficient factual basis upon which to establish probable cause.").

[¶ 20] However, in the next paragraph of the affidavit, Detective Gress proffered information that was procured from the illegal search:

Deputies spoke with Rebecca Jean Larson who is staying in Room 104. Rebecca stated that Rebecca may or may not have just smoked marijuana in Room 104. Rebecca would not consent to a search of the room, however [she] told deputies that Rebecca did have a medical marijuana card and that Rebecca did have marijuana in a Hertz rental vehicle that Rebecca had rented.

. . . .

Deputy Grabinger stated that all five (5) persons were told they were detained and to stay where they were at; Kurec [sic] went into the bathroom with a bag and said that Kurec was going to brush Kurec's teeth. Deputy Grabinger attempted to keep the door open while Kurec brushed Kurec's teeth but was blocked by Larson. Deputy Grabinger heard the water running and Deputy Grabinger stated that there was an overpowering odor of what Deputy Grabinger knows through Deputy Grabinger's training and experience as a police officer to be the odor of marijuana. Deputy Grabinger then order[ed] Kurec to open the door or the door would be breached. Kurec didn't open the door and Deputy Grabinger breached entry. Deputy Swenson handcuffed Kurec and stated that Kurec's arms were wet and appeared to have what Deputy Swenson knows through Deputy Swenson's training and experience as a police officer to be marijuana on Kurec's arms. Deputy Swenson asked Kurec what Kurec was doing and Kurec replied what do you think I'm doing . . . I was trying to get rid of it.

This Court has instructed, "illegally obtained evidence cannot be used to establish probable cause to issue a search warrant. To determine whether probable cause exists, we excise the tainted information from the affidavit and consider the remaining legal evidence presented to the issuing magistrate." *State v. Fields*, 2005 ND 15, ¶ 6, 691 N.W.2d 233 (citation omitted). Here, drawing out the "poison" from the search warrant affidavit still leaves the vestiges of probable cause. The marijuana odor detected by the deputies is sufficient for the probable cause that is needed to secure a warrant. *See Schmalz*, 2008 ND 27, ¶ 20, 744 N.W.2d 734.

[¶ 21] The second tier of the independent-source analysis provides that "the decision to seek the warrant must not be prompted by observations made during the illegal search." *Gregg*, 2000 ND 154, ¶ 54,

615 N.W.2d 515. In *Murray*, the United States Supreme Court held that a search pursuant to a warrant would not be of an independent-source "if the agents' decision to seek the warrant was prompted by what they had seen during the initial [illegal] entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Murray*, 487 U.S. at 542, 108 S.Ct. 2529 (footnote omitted). This Court has stated that "*Murray* instructs that . . . the warrant is nonetheless tainted if the illegally obtained facts prompted the [officers'] decision to seek the warrant." *Winkler*, 552 N.W.2d 347, 354 (N.D.1996) (quotation omitted).

[¶ 22] Here the question is whether the officers' decision to seek the warrant was independently based on the employee complaint and officers' smell of marijuana, or also a product of the subsequent illegal search. It is conceivable that the officers' decision to seek the warrant may, to some extent, have been based on the illegal search.

[¶ 23] Nevertheless, under our standard of review, we conclude there is sufficient competent evidence in the record supporting the district court's finding that the initial decision to seek the warrant was not prompted by any observations made during the illegal search. The district court found the deputies were called to the Days Inn by an employee "who smelled a strong scent of marijuana coming from room 104. Based on their training and experience, the deputies were able to confirm this before they knocked on the door to that room. This alone was enough for the deputies to obtain a warrant." The court also found "Swenson first called for a warrant before the illegal entry yielded any new information of significance." The court determined the initial decision to seek the warrant was not prompted by any

observations made during the illegal entry. The court's findings are supported by the evidence.

[¶ 24] We conclude the district court did not err in applying the independent-source doctrine. The warrant affidavit, excised of its tainted information, is supported by probable cause derived from sources independent of the illegal search. Additionally, the district court's finding that the officers' decision to seek the warrant was not prompted by observations made during the illegal search is supported by sufficient competent evidence in the record.

### IV

[¶ 25] Larson and Kuruc argue the district court abused its discretion by refusing to admit their respective medical marijuana prescriptions from the State of Washington as a lawful defense under North Dakota's Uniform Controlled Substances Act. The district court denied Larson and Kuruc's motions in limine to include the prescriptions as a defense.

[¶ 26] A district court's ruling on a motion in limine is reviewed under the abuse of discretion standard. *State v. Lutz*, 2012 ND 156, ¶ 3, 820 N.W.2d 111. "A court has broad discretion in deciding whether evidence is relevant, and this Court does not reverse a district court's decision to admit or exclude evidence on the basis of relevance unless the district court abused its discretion by acting in an arbitrary, unreasonable, or unconscionable manner." *State v. Bjerklie*, 2006 ND 173, ¶ 4, 719 N.W.2d 359.

[¶ 27] Larson and Kuruc argue the possession of a controlled substance pursuant to a prescription or order is a valid defense. Under Washington law, their prescriptions allow each party to possess up to twenty-four ounces of usable canna-

bis and up to fifteen cannabis plants. The prescriptions were issued by a licensed neuropathic doctor in Washington. Larson and Kuruc seek to use the prescriptions to contend they were in lawful possession and as a defense against the charge of possession with intent to deliver.

[¶ 28] Under North Dakota's Uniform Controlled Substances Act, marijuana is classified as a schedule I controlled substance. N.D.C.C. § 19–03.1–05(5)(h). A controlled substance must be classified under schedule I if it: "1. Has high potential for abuse; and 2. Has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision." N.D.C.C. § 19–03.1–04.

[¶ 29] North Dakota's Uniform Controlled Substances Act contains a prescription exception that allows a person to possess a controlled substance if "the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice...." N.D.C.C. § 19–03.1–23(7). Under the exception, this Court has stated, "A defendant may not be charged with possession of a controlled substance if he has 'a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice.'" State v. Holly, 2013 ND 94, ¶ 65, 833 N.W.2d 15 (quoting N.D.C.C. § 19–03.1–23(7)).

[¶ 30] The burden of proving the prescription exception is on the party claiming it. Id. A "valid prescription" is defined as "a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by a: (1) Practitioner who has conducted at least one in-person medical evaluation of the patient; or (2) Covering practitioner." N.D.C.C. § 19–03.1–22.4(1)(e); see also

N.D.C.C. § 19–02.1–15.1(1)(f). A "practitioner" is defined as a "person licensed, registered, or otherwise permitted by the jurisdiction in which the individual is practicing to distribute, dispense, conduct research with respect to, or to administer a controlled substance in the course of professional practice or research." N.D.C.C. § 19–03.1–01(25)(a).

[¶ 31] The district court reasoned, "Because the schedule I substances have been found to have no accepted medical use, it follows there could be no legitimate medical purpose for a prescription." By comparison, the court examined the statutory language describing schedule II, III, and IV substances, which states, "The substance has currently accepted medical use in treatment in the United States." N.D.C.C. §§ 19–03.1–06, 19–03.1–08, 19–03.1–10. After reviewing the "no accepted medical use" language contained in the schedule I statutory definition and the language in the valid prescription exception, the court resorted to statutory interpretation to resolve the apparent conflict and reasoned, "Construction of the relevant statutes is harmonized by the interpretation the valid prescription defense only applies to substances listed on the schedules II through IV."

[¶ 32] Statutory interpretation is a question of law. Teigen v. State, 2008 ND 88, ¶ 19, 749 N.W.2d 505. "Statutes must be construed as a whole and harmonized to give meaning to related provisions, and are interpreted in context to give meaning and effect to every word, phrase, and sentence." Herring v. Lisbon Partners Credit Fund, Ltd. P'ship, 2012 ND 226, ¶ 15, 823 N.W.2d 493. "In construing statutes, we consider the context of the statutes and the purposes for which they were enacted." Nelson v. Johnson, 2010 ND 23, ¶ 12, 778 N.W.2d 773. "When a general statutory provision conflicts with

a specific provision in the same or another statute, 'the two must be construed, if possible, so that effect may be given to both provisions.'" *State ex rel. Dep't of Human Servs. v. N.D. Ins. Reserve Fund,* 2012 ND 216, ¶ 12, 822 N.W.2d 38 (quoting N.D.C.C. § 1–02–07). When statutes relate to the same subject matter, this Court makes every effort to harmonize and give meaningful effect to each statute. *Id.*

[¶ 33] Construing the Uniform Controlled Substances Act as a whole, and harmonizing the prescription exception with the schedule I language, we conclude the plain language of the act does not provide for a medical marijuana prescription defense. Under the authority of N.D.C.C. § 19–03.1–02, the North Dakota Board of Pharmacy has determined that marijuana has a high potential for abuse, and no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision; this determination had been codified by the legislature. N.D.C.C. § 19–03.1–04. In this context, it does not logically follow that there could be a valid prescription for a substance that has no medical use or lacks accepted safety. We do not believe the legislature enacted the Uniform Controlled Substances Act to put North Dakota in the perplexing position where it must recognize out-of-state marijuana prescriptions even though the same exact prescription cannot be made legal for its own citizens.

[¶ 34] Additionally, although state sanctioned medical marijuana has become ubiquitous in recent years, it remains illegal under federal law. 21 U.S.C. § 841(a)(1) (2012). Federal law, like North Dakota law, provides that marijuana has no accepted medical use for treatment in the United States and lacks accepted safety for use, even under medical supervision. 21 U.S.C. § 812(b)(1) (2012). Under the Supremacy Clause, U.S. Const. art. VI, the laws of the United States are the "supreme law of the land," and a state law that conflicts with federal law is without effect. *State ex rel. Stenehjem v. FreeEats.com, Inc.,* 2006 ND 84, ¶ 19, 712 N.W.2d 828. Because the Washington medical marijuana prescriptions are contrary to federal law, we conclude the district court properly construed the North Dakota statute and precluded Larson and Kuruc from introducing their prescriptions as a valid defense. *See, e.g., Burns v. State,* 246 P.3d 283, 286 (Wyo.2011) (holding the defendant's Colorado medical marijuana card and a physician's certification did not exempt him from conviction for felony possession of marijuana; the possession of marijuana, even for medical purposes, was illegal under federal law and state law).

[¶ 35] Larson and Kuruc also argue that their medical marijuana prescriptions can be used as a defense to negate the government's claim that the amount of marijuana possessed evidenced an "intent to deliver." According to the arrest synopsis, Larson and Kuruc were arrested with approximately 12.8 ounces of marijuana. Their respective prescriptions allowed them each to possess up to twenty-four ounces of usable cannabis and up to fifteen cannabis plants in Washington. The district court determined that the jury "will not be instructed a prescription from the State of Washington is a valid defense to either possession with intent to deliver or simple possession. Whether the same evidence may be admissible for some other purpose is a different question, which will be considered as future developments warrant."

[¶ 36] Rule 11(a)(2), N.D.R.Crim.P., states "a defendant may enter a conditional plea of guilty, reserving in writing the right to have an appellate court review an

adverse determination of a specified pretrial motion." Here, the court left open whether the prescription could be used for some other purpose. We surmise "some other purpose" for allowing the prescription into evidence could be a factual defense to show an amount of marijuana intended for personal use and not for distribution. Although the lower court did not make an affirmative ruling, there is no indication that the court would have prohibited Larson and Kuruc from arguing to the fact-finder that the amount was commensurate with a prescribed personal use and not indicative of an intent to deliver.

[¶ 37] We conclude the district court did not abuse its discretion in denying Larson and Kuruc's motions in limine to the extent that the Washington medical marijuana prescriptions may not be used as an absolute defense to either the crimes of possession of marijuana with intent to deliver or simple possession.

### V

[¶ 38] We affirm the criminal judgments against Larson and Kuruc.

[¶ 39] ALLAN L. SCHMALENBERGER, S.J., WILLIAM F. HODNY, S.J., and DALE V. SANDSTROM, J, concur.

[¶ 40] The Honorable WILLIAM F. HODNY, S.J., and the Honorable ALLAN L. SCHMALENBERGER, S.J., sitting in place of KAPSNER, J., and McEVERS, J., disqualified.

CROTHERS, Justice, specially concurring.

[¶ 41] I agree with the majority decision concluding exigent circumstances did not justify the warrantless search of Kuruc and Larson's hotel room. I also concur in affirming this case under the independent source doctrine. But I am concerned that our doing so will mistakenly be read as a new, lower, minimal standard for information supporting issuance of a warrant.

[¶ 42] The majority explains the legal standard for reliance on the independent source doctrine. Majority opinion at ¶¶ 17–18. I fully embrace the analysis of the second prong of the doctrine that the search warrant must not be prompted by information or observations made during an illegal search. My reservation is with the application of the first part of the analysis concluding sufficient information existed for the warrant.

[¶ 43] This Court has explained that conclusory statements are not sufficient to support issuance of a search warrant. " '[S]ufficient information, rather than "bare bones" information must be presented to the magistrate'; '[a]n affidavit expressed in conclusions without detailing underlying information is insufficient for probable cause.' " *State v. Thieling*, 2000 ND 106, ¶ 11, 611 N.W.2d 861 (quoting *State v. Rangeloff*, 1998 ND 135, ¶ 19, 580 N.W.2d 593).

[¶ 44] At the same time, in the context of smelling marijuana and officer training and experience, we have stated:

"The mere smell of marijuana, as detected by a trained and experienced officer, has been held by this Court to create a sufficient factual basis upon which to establish probable cause. *See, e.g.,* [*State v.*] *Overby*, [1999 ND 47, ¶ 13, 590 N.W.2d 703]. ('[T]he officer was well-trained in identifying the odor of marijuana. Under *Binns* and the particular facts of this case, we conclude Officer Nagel had probable cause to arrest Overby....'); *State v. Binns*, 194 N.W.2d 756, 758 (N.D.1972) ('We believe, in this case, that the circumstances justified a warrantless search of the automobile, since the odor of burning mari-

juana which the officer recognized, and which he knew was coming from the automobile, gave him probable cause to believe that a felony was being committed.').”

*State v. Schmalz*, 2008 ND 27, ¶ 20, 744 N.W.2d 734.

[¶ 45] In this case, the search warrant affidavit indicated that the entire useful independent basis for issuance of the search warrant was:

> “On 01/09/2013, the Cass County Sheriff's Office received a complaint from staff at the Day's Inn hotel in Casselton for an odor of marijuana. Upon arrival Deputy Eric Swenson and Deputy Tonya Grabinger were able to smell what they know through their training and experience as a police officer to be the odor of marijuana coming from Room 104. Room 104 is currently being rented by Brian Alan Kurec [sic].”

Majority opinion at ¶ 19. The affidavit also stated that “there was an overpowering odor of what Deputy Grabinger knows through Deputy Grabinger's training and experience as a police officer to be the odor of marijuana.” *Id.* at ¶ 20. However, this observation was made after the Deputy unlawfully entered the room and cannot be used in application of the independent source doctrine. *Id.*

[¶ 46] The search warrant affidavit was presented to the magistrate by a detective in Fargo who had not been in the Casselton motel. The detective's affidavit reads in the third-person voice that “their training and experience” provides probable cause for issuance of a warrant. The affiant spoke in the third-person voice because he had not smelled burning marijuana. The affiant-detective in Fargo uses more than three paragraphs in describing *his* training and experience. But *his* training and experience are irrelevant to the question whether deputies on the

scene could identify what they smelled. To that point, the affidavit contains no information about any training and experience of the two deputies who were actually at the motel. The magistrate therefore was provided with nothing concerning the two deputies' training and experience or their ability to identify the smell.

[¶ 47] Under our case law, the lack of explanation of the deputies' training and experience arguably is not fatal to validity of this warrant because a licensed peace officer might be reasonably presumed to be able to identify the smell of burned marijuana. To that extent, identification of the smell might be a foundational or predicate fact requiring less detail.

[¶ 48] In the broader context, I caution against reading this decision to represent the rule that bare statements of officer “training and experience” can serve as proxy for factual details. *See State v. Deviley*, 2011 ND 182, ¶ 27, 803 N.W.2d 561 (Kapsner, J., dissenting) (“[T]he phrase ‘officer's training and experience’ should not be used to mask what was operating in this case—the officer simply had a strong hunch that these individuals, driving a vehicle with an out-of-state license, were engaged in criminal activity. We have to be mindful not to let ‘officer's training and experience’ become a substitute for a showing of a true reasonable and articulable suspicion that a person is engaged in criminal activity.”). Rather, I join this decision based on the understanding that we are preserving the requirement that search warrant affidavits must contain more than bare-boned assertions or conclusory factual statements, at least as to the ultimate basis constituting probable cause for issuance of a warrant.

[¶ 49] DANIEL J. CROTHERS